# Exhibit D

to

**SIEGEL DECLARATION IN SUPPORT
OF NOTICE OF REMOVAL**

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ONONDAGA

BERNARD a/k/a "BERNIE" FINE,

                Plaintiff,

vs.

ESPN, INC.,
THE HEARST CORPORATION, and
THE WALT DISNEY COMPANY,

                Defendants.

INDEX No. 2012-6138
COMPLAINT

Plaintiff, by his attorneys, Harris Beach PLLC, for his Complaint against the Defendants herein alleges:

## THE PARTIES

1. Plaintiff is a resident of the State of New York, County of Onondaga.

2. Upon information and belief Defendant ESPN, Inc. ("ESPN") is a corporation organized and operating under the laws of the State of Delaware.

3. Upon information and belief ESPN is authorized to and is doing business in the State of New York with its principal office for the transaction of business at 77 West 66th Street, New York, New York 10023.

4. Upon information and belief Defendant The Hearst Corporation ("Hearst") is a corporation organized and operating under the laws of the State of Delaware.

5. Upon information and belief Hearst is authorized to and is doing business in the State of New York with its principal office for the transaction of business at 300 West 57th Street, New York, New York 10019.

6. Upon information and belief Defendant The Walt Disney Company ("Walt Disney") is a corporation organized and operating pursuant to the laws of the State of Delaware.

7. Upon information and belief Walt Disney is authorized to and is doing business in the State of New York with an office at 77 West 66th Street, New York, New York 10023.

8. Upon information and belief Hearst and Walt Disney own all of the outstanding capital stock of ESPN and operate ESPN as a joint venture.

9. Upon information and belief ESPN operates as a Sports Programming Network operating on cable television networks throughout the United States.

10. Upon information and belief ESPN's Sports Programming Network includes Operating Units that include ESPN, ESPN2, ESPN U, ESPNHD, ESPN Classic, ESPN News, ESPN.com, ESPN.com News Services, ESPN RADIO, and ESPN The Magazine.

11. Upon information and belief the Operating Units reach approximately 87 million households in the United States.

## THE PLAINTIFF

12. The Plaintiff is sixty-seven years old and a graduate of Syracuse University in Syracuse, New York.

13. Plaintiff joined the staff of the Syracuse University Men's Basketball team as an Assistant Coach in 1975.

14. Thereafter, and for the next thirty-five years, Plaintiff worked in various coaching capacities for the Syracuse University Men's Basketball Team, including Acting Head Coach for a period in 2002.

15. Plaintiff was named Associate Head Coach of the Syracuse University Men's Basketball Team in 2000 and served in that capacity until November 27, 2011.

16. Throughout his thirty-five year career Plaintiff was nationally recognized as one of the foremost assistant coaches in National Collegiate Athletic Association Division I Basketball. He served with distinction at Syracuse, a nationally renowned college basketball program and was never the subject of any University administrative or disciplinary proceedings.

17. Plaintiff devoted his life and career to Syracuse University and intended on continuing in that career as Associate Head Coach until his retirement.

## THE BROADCASTS

### A. November 17, 2011

18. On November 17, 2011 ESPN broadcast a report on the ESPN cable television network that contained statements from an individual named Bobby Davis claiming that the Plaintiff began sexually abusing him [Davis] in 1984 when he was in the seventh grade and that the abuse continued until the year 2000 when Davis was twenty-seven ("November 17 Broadcast"). A complete copy of the November 17 Broadcast is incorporated by reference herein.

19. Davis alleged in the November 17 Broadcast that the Plaintiff sexually abused him beginning at age eleven (11) and continuing until he was twenty-seven (27).

20. The November 17 Broadcast was, upon information and belief, televised on the ESPN cable television show "Outside the Lines".

21. Upon information and belief, the November 17 Broadcast was written by an ESPN reporter, Mark Schwartz.

22. The November 17 Broadcast was published by ESPN during the unfolding scandal at Penn State University involving former Assistant Football Coach, Jerry Sandusky, who was allegedly involved in multiple cases of child sexual abuse, some of which took place

when he was employed by Penn State University and others at Penn State Facilities after his retirement.

23. The Penn State/Sandusky revelations were the subject of intense, national media scrutiny and heightened interest and concern about sexual abuse of children throughout the United States.

24. The November 17 Broadcast was intended by ESPN and Schwartz to present a "scoop" of a story of another scandal involving child sexual abuse on a college campus.

25. The November 17 Broadcast was, upon information and belief, presented to more than 87 million households in the United States and immediately became the subject of similar, wide-spread and intense national media scrutiny. It was reported in national newspapers and on television networks as well as internet services throughout the country as another case of sexual abuse involving a coach on a college campus.

26. The November 17 Broadcast caused media outlets throughout the United States to refer to the Davis allegations as "another Jerry Sandusky" case, and the Plaintiff was immediately cast as a sexual predator and child abuser.

27. After the November 17 Broadcast, CNN, for example, continually broadcasted reports about the "Syracuse Sex Abuse Scandal" featuring a photograph of the Plaintiff with the caption "Accused Sexual Abuser Bernie Fine".

B. The History of the November 17 Broadcast

28. ESPN first learned of the Bobby Davis allegations concerning the Plaintiff approximately nine years before the November 17 Broadcast.

29. ESPN Reporter Mark Schwartz interviewed Bobby Davis on video tape in 2002. Schwartz could find no corroboration for the Davis story and entertained serious doubts about

4

the truth of Davis' claims. He did not report Davis' claims to the Syracuse Police or Syracuse University authorities.

30. Upon information and belief, Davis also provided Schwartz with an audio tape of a conversation he, Davis, made with the Plaintiff's wife, Laurie Fine, on October 8, 2002. Again, Schwartz entertained serious doubts about the truth of statements made in the conversation about the Plaintiff. Although he retained the tape recording, Schwartz did not provide a copy to the Syracuse Police or Syracuse University authorities.

31. Before ESPN made the November 17 Broadcast it was aware of the fact that Syracuse University conducted an internal investigation of the 2005 Davis allegations and determined that there was no credibility to his claims. The University did not take any action against the Plaintiff. He continued to serve the University as its Associate Head Men's Basketball Coach.

32. Although Schwartz was aware of the Davis allegations for nine years, he never contacted the Plaintiff to comment on them.

33. Upon information and belief, Davis contacted Schwartz again in November 2011, at the height of the Penn State/Sandusky scandal, to repeat his charges against the Plaintiff. This time Davis claimed that his step-brother, Michael Lang, was also sexually abused by the Plaintiff and was willing to reveal his story to Schwartz.

34. Upon information and belief, Schwartz knew that Lang had previously denied being sexually abused by the Plaintiff. Now, however, Lang claimed a recollection of having his leg touched by the Plaintiff on a few occasions.

35. Based upon the Lang "corroboration", Schwartz and ESPN made the November 17 Broadcast repeating the Davis allegations that were made nine years earlier, allegations ESPN previously found not to be credible.

36. The November 17 Broadcast was made with actual malice and reckless disregard for the truth. ESPN and Schwartz entertained serious doubts about the truth of the allegations made by Davis but nevertheless broadcast them as part of their "scoop" of another college athletics-child sexual abuse scandal.

37. The allegations of sexual abuse made by ESPN in the November 17 Broadcast about and concerning the Plaintiff are false as to the Plaintiff.

38. The allegations of sexual abuse made by ESPN in the November 17 Broadcast about and concerning the Plaintiff are defamatory as to the Plaintiff.

C. The Tomaselli Broadcast

39. Shortly after the November 17 Broadcast, Schwartz and ESPN were contacted by an individual named Zach Tomaselli who told Schwartz that he, too, was sexually abused by the Plaintiff.

40. Upon information and belief, Tomaselli told Schwartz of a specific incident that occurred in a hotel room in Pittsburgh, Pennsylvania during a Syracuse University trip to a basketball game against the University of Pittsburgh.

41. Upon information and belief, Tomaselli provided easily verifiable information to Schwartz concerning his alleged contacts with the Plaintiff, none of which were true.

42. Schwartz did not report any of Tomaselli's allegations to the Syracuse Police or Syracuse University authorities.

43. Rather than contact the police or Syracuse University authorities, Schwartz told Tomaselli to contact Bobby Davis, thus allowing two of his and ESPN's "sources" to corroborate their stories and bolster the November 17 Broadcast, a tactic that was later condemned by media and journalism commentators throughout the United States.

44. On November 27, 2011 ESPN, in a report broadcast on the ESPN cable television show "Outside the Lines", Schwartz identified Tomaselli as a "Third Accuser" of the Plaintiff and stated that Tomaselli claimed that the Plaintiff sexually abused him. The entire contents of the Tomaselli Broadcast are incorporated herein by reference.

45. Immediately after the Tomaselli Broadscast identifying the Plaintiff as the "Third Accuser", an internet Syracuse University Men's Basketball Blog and other media outlets referred to Tomaselli as the "smoking gun".

46. The Tomaselli allegations were then broadcast on national network and cable news channels. FOX NEWS, for example, featured an interview with a commentator who described the Tomaselli allegations as the "last straw" and the "nail in the coffin for Bernie Fine". The FOX NEWS reporter stated that there are "three guys now" who are making "damaging allegations" against the Plaintiff.

47. On that same day, November 27, 2011, ESPN broadcast a report from its "legal commentator", Roger Cossack, who stated how significant the allegations of the "Third Accuser" were to the Plaintiff and his "legal case".

48. ESPN made the Tomaselli Broadcast with actual malice and reckless disregard for the truth.

49. ESPN entertained serious doubts about the truth of the Tomaselli allegations. Upon information and belief, Schwartz and ESPN had at least four days to investigate the

Tomaselli allegations. They knew that Tomaselli's father had branded him a liar and that Tomaselli himself was the subject of a criminal sexual abuse charge in the State of Maine. Nevertheless, ESPN chose to broadcast the Tomaselli allegations without any corroboration and after doing nothing more than referring him to Bobby Davis.

50. Tomaselli later recanted everything he told Schwartz and admitted they were "lies".

51. The Tomaselli Broadcast about and concerning the Plaintiff was false as to him.

52. The Tomaselli Broadcast about and concerning the Plaintiff was defamatory as to him.

### D. THE RECORDED TELEPHONE CONVERSATION

53. On November 27, 2011 ESPN also published and broadcast on its "Outside The Lines" program selective contents of the telephone conversation between Bobby Davis and Laurie Fine, the Plaintiff's wife, that Davis recorded in October 2002. Plaintiff incorporates the complete transcript of the November 27, 2011 broadcast of the recorded telephone conversation in this Complaint by reference.

54. The ESPN Reporter on "Outside the Lines" stated that the Laurie Fine/Bobby Davis conversations "validate that he [Davis] was sexually abused" by the Plaintiff.

55. ESPN entertained serious doubts about the recorded telephone conversation and failed to publish it for nine years. Nevertheless, it broadcasted the recorded telephone conversation on November 27, 2011 as part of its continuing effort to present exclusive "scoops" about another college athletics-child sexual abuse scandal involving the Plaintiff.

56. ESPN broadcast the tape of the recorded telephone conversation to bolster its false reporting of the Davis and Tomaselli allegations. Although it had possession of the tape for

HARRIS BEACH
ATTORNEYS AT LAW

nearly nine years, it never contacted the Plaintiff to ask him about the truth of the statements made in the conversation.

57. Upon information and belief, ESPN and Schwartz determined that the "Third Accuser" about whom they entertained serious doubts, justified the publication of the nine year old recorded telephone conversation.

58. The telephone conversation was broadcast by ESPN as part of its ongoing "investigation" of the "Bernie Fine sexual abuse allegations". The Plaintiff was not a party to the conversation and was never made aware of the recording by Schwartz.

59. The telephone conversation was broadcast by ESPN based upon the allegations of Davis, Lang and Tomaselli, none of which were true and about which ESPN entertained serious doubts as to their veracity.

60. Publishing the telephone conversation precipitated another burst of national media attention directed at the Plaintiff featuring headlines on FOX NEWS such as "FMR SYRACUSE ASST COACH WIFE ACKNOWLEDGES ABUSE ON TAPE".

61. The recorded telephone conversation was broadcast by ESPN and with actual malice and reckless disregard for the truth. ESPN entertained serious doubts about the truth of the recorded telephone conversation having withheld its publication for nine years and publishing it only after the Tomaselli allegations.

62. The contents of the recorded telephone conversation broadcast by ESPN about and concerning the Plaintiff were false as to him.

63. The contents of the recorded telephone conversation broadcast by ESPN about and concerning the Plaintiff were defamatory as him.

HARRIS BEACH PLLC
ATTORNEYS AT LAW

9

## THE DAMAGES TO THE PLAINTIFF

64. On November 27, 2011, after the revelation of the Tomaselli allegations and the broadcast of the recorded telephone conversation, Plaintiff was fired from his job as Associate Head Coach of the Syracuse University Men's Basketball Team.

65. As a result of the broadcasts by ESPN, local law enforcement authorities, including the United States Attorney for the Northern District of New York, based in large part on Tomaselli's statements to law enforcement officials, obtained a search warrant to enter Plaintiff's home, conduct an exhaustive search, and seize a substantial number of items from his residence.

66. As a result of the defamatory broadcasts by ESPN, the Plaintiff was the subject of national ridicule, animosity and scorn because he was identified as a "child abuser".

67. As a result of the malicious, defamatory broadcasts by ESPN alleged herein, Plaintiff has been unable to find work as a basketball coach.

## THE CONCLUSION

68. In November 2012, the United States Attorney for the Northern District of New York announced that he would take no action against the Plaintiff based upon the Davis, Lang and Tomaselli allegations.

## FIRST CAUSE OF ACTION

69. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 68 as if fully alleged herein.

70. The November 17 Broadcast about and concerning the Plaintiff was made by ESPN with actual malice toward the Plaintiff and reckless disregard for the truth. It entertained serious doubts about the contents of the November 17 Broadcast for nearly nine years. It made

the November 17 Broadcast based upon the alleged corroboration from a relative of Bobby Davis who had previously denied any wrongdoing by the Plaintiff.

71. The November 17 Broadcast by ESPN about and concerning the Plaintiff was false as to him.

72. The November 17 Broadcast by ESPN about and concerning the Plaintiff was defamatory as to him.

73. As a result of the foregoing, Plaintiff suffered damage to his person, reputation and business.

## SECOND CAUSE OF ACTION

74. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 68 as if fully alleged herein.

75. The November 27, 2011 broadcast of the Tomaselli allegations about and concerning the Plaintiff was made with actual malice toward the Plaintiff and reckless disregard for the truth.

76. ESPN entertained serious doubts about the Tomaselli allegations. Rather than perform a simple investigation which would have revealed the Tomaselli allegations to be the lies that they were, ESPN and Schwartz purposefully avoided the truth and advised Tomaselli to contact Davis.

77. The November 27, 2011 broadcast by ESPN identifying Tomaselli as the "Third Accuser" of the Plaintiff was false as to him.

78. The November 27, 2011 broadcast identifying Tomaselli as the "Third Accuser" of the Plaintiff was defamatory as to him.

HARRIS BEACH
ATTORNEYS AT LAW

11

79.     As a result of the foregoing Plaintiff suffered damage to his person, reputation and business.

## THIRD CAUSE OF ACTION

80.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 68 as if fully alleged herein.

81.     The November 27, 2011 broadcast of the Davis recorded telephone conversation was made with actual malice toward the Plaintiff and reckless disregard for the truth.

82.     ESPN entertained serious doubts about the truth of the contents of the recorded telephone conversation. It had the recorded telephone conversation in its possession for nearly nine years. It never contacted the Plaintiff to comment on the accuracy of the conversation. Instead, it decided to broadcast the recorded telephone conversation after learning of the "Third Accuser", Tomaselli. It also knew that Davis claimed to have a sexual relationship with Mrs. Fine.

83.     The broadcast of the recorded telephone conversation about and concerning the Plaintiff was false as to him.

84.     The broadcast of the recorded telephone conversation about and concerning the Plaintiff was defamatory as to him.

85.     As a result of the foregoing, Plaintiff suffered damage to his person, reputation and business.

WHEREFORE, Plaintiff demands judgment against the Defendants on all three causes of action in an amount in excess of the jurisdictional limits of all lower courts together with the costs and disbursements of this action and such other and further relief as to the Court may seem just and proper.

HARRIS BEACH PLLC
ATTORNEYS AT LAW

Dated: May 6, 2013

                                                          Yours, etc.,
                                                          Harris Beach PLLC

                                                          By: _____
                                                              Richard T. Sullivan
                                                          *Attorneys for Plaintiff*
                                                          *Bernard a/k/a "Bernie" Fine*
                                                          716 Exchange Street, Suite 1000
                                                          Buffalo, New York 14210
                                                          (716) 200-5050

To:    Schwartz & Thomashower LLP
        *Attorneys for Defendant*
        *The Walt Disney Company*
        15 Maiden Lane, Suite 705
        New York, New York 10038

        Levine Sullivan Koch & Schultz, LLP
        *Attorneys for Defendant ESPN, Inc.*
        1899 L. Street N.W.
        Washington, D.C. 20036